NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Duwana JOHNSON, | |
| Plaintiff, | Civil No. 10-0805 (AET) |
| v. | **OPINION** |
| MANCHESTER TOWNSHIP, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

I.   INTRODUCTION

This matter comes before the Court upon Defendant Joseph Howell's Motion for Summary Judgment [docket # 22]. Plaintiff opposes the motion [27]. The Court has decided the motions upon the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's motion is granted in part and denied in part, and Plaintiff's state law claims are dismissed on jurisdictional grounds.

II. BACKGROUND

This case arises out of a police motor vehicle stop during which Defendant Sgt. Joseph Howell's gun discharged, causing a bullet fragment to hit Plaintiff Duwana Johnson, who was sitting in the front passenger seat of the vehicle.

Shortly after 9:00pm on the night of May 23, 2009, South Toms River police officers Michael Schneidt and Christopher Watkins observed Plaintiff's brother, Franklin Johnson, driving a minivan. Schneidt recognized Johnson from previous encounters and knew that Johnson's

license had been suspended and that there were active warrants for his arrest. (McKenna Certification Ex. B., Investigation Report, at 1.) As the officers made a U-turn to get behind Johnson's minivan, Johnson made an illegal right turn, at which time the officers turned on their emergency lights and siren in order to stop the vehicle. (*Id.*) Johnson turned left onto Route 166 and ran a stop sign, eventually stopping at the corner of Route 166 and Water Street. (*Id.*) The officers approached the vehicle and ordered Johnson to put the vehicle in park and turn the engine off. (*Id.*) Johnson asked what he had done wrong and asked if he could complete his left turn onto Water Street and park at the 7-11 convenience-store on the corner. (*Id.* at 1–2.) The officers once again told Johnson to park the vehicle and turn off the engine, but Johnson instead pulled away and accelerated through a red light, passing several cars, crossing into oncoming traffic, and forcing another vehicle to swerve out of the way. (*Id.* at 2.) The officers lost sight of the vehicle and began heading back to Toms River via the Water Street overpass over Garden Street Parkway when they observed Johnson's minivan entering the Parkway heading south. (*Id.*) They accordingly relayed this information to other units, noting that Johnson was likely heading toward Exit 80 to return to his residence in Manitou Park. (*Id.*)

Defendant Howell, a Manchester Township Detective-Sergeant who had been assigned as a member of the Ocean County Regional SWAT Team to a multi-agency gang patrol initiative, was riding along with Lt. Daniel Evanowski of the South Toms River Police Department on the night in question. (Joseph Howell Certification ¶¶ 1, 14, 18, 22.) Howell and Evanowski heard radio transmissions stating that Johnson had fled a motor vehicle stop and that one of the occupants was believed to be Corey Milligan, an individual whom Howell and other SWAT members believed to be in possession of a missing police hand-gun. (*Id.* at ¶ 24.) Evanowski drove a short distance to the southbound ramp for Exit 80 and was in the process of positioning the patrol car in the direction of the exiting vehicles when he and Howell saw a maroon minivan

speeding down the exit ramp. (*Id.* at ¶ 33 – 34.) The minivan, after turning off the exit ramp and onto Double Trouble Road, came to a stop at a red light behind another vehicle in the right-most lane. (*Id.* at ¶ 29.) Evanowski followed and stopped the patrol car directly behind the minivan, activating his emergency lights. Howell and Evanowksi did not discuss or plan out their ensuing approach of the minivan. (*Id.* at ¶ 31.)

Howell noticed that Evanowski had exited the patrol car and was quickly moving forward toward the driver's side of the minivan. (*Id.* at ¶ 33.) Howell got out of the patrol car to take a "cover" position, gripping his flashlight with his left hand, drawing his gun with his right hand, and placing his gun-hand on his left wrist for support. (*Id.* at ¶ 37.) Upon assuming this "cover" position near the right rear corner of the minivan, Howell realized that his flashlight was backwards such that it was pointing toward himself rather than the minivan. (*Id.* at ¶ 38.) As it was nighttime and therefore dark outside, he apparently was unable to see inside the minivan and needed illumination,[1] (*id.* at ¶ 39.) Rather than take the time to re-position the flashlight, Howell instead opted to activate his weapon-mounted light. (*Id.*) However, when he attempted to press the light switch with his right index finger, the gun discharged—most likely as a result of his finger slipping and hitting the trigger. (*Id.* at ¶¶ 39, 46.) The bullet from the gun shattered the middle passenger-side window of the minivan, (Guy P. Ryan, Esq., Certification Exs. A, C & D, Photographs of Broken Minivan Window), and a fragment of the bullet lodged in Plaintiff's shoulder.

Howell was subsequently charged with violating the Manchester Township Police Department's Code of Conduct for Accidental Discharge of a Firearm. (Howell Certification ¶

---

[1] Plaintiff denies that Howell could not see inside the minivan, based on Evanowski's deposition testimony that he did not use a flashlight because Garden State Parkway is well-lit. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 39 (citing Pl.'s Respl. Ex. C, Evanowski Dep. 54:16–18).) However, Evanowski also testified that he was not even carrying a flashlight and that it was possible to see inside the front but not the back windows due to the factory tint. (*Id.* at 54:2–13, 19–20.) Accordingly, the Court does not find this to be a genuine issue.

52.) An Internal Affairs investigation sustained this allegation. (*Id.*) The Ocean County Prosecutor's Office reviewed the incident and concluded that the discharge was accidental. (McKenna Certification Ex. G, Letter from First Assistant Prosecutor Ronald F. DeLigny to Chief William Brase, February 18, 2010.) Howell served a five-day negotiated suspension, underwent a psychological evaluation, completed an additional ten hours of firearms training, and has since been restored to active duty. (*Id.* at ¶¶ 54–55.) Plaintiff's brother Franklin Johnson was convicted of a violation of New Jersey's eluding statute, N.J.S.A. 2C:29-2b. (*Id.* at ¶ 50.)

Plaintiff filed the Complaint [1] on February 17, 2010. Plaintiff claims that Howell's actions constituted an excessive use of force in violation of the Fourth Amendment, an assault and battery, an intentional infliction of emotional distress, negligence, and a violation of the New Jersey Civil Rights Act ("NJCRA"). (*See generally* Compl.) Plaintiff further seeks to hold Manchester Township liable for the police department's failure to train its officers adequately as required under the Constitution. (*Id.* at ¶¶ 30–39.)

Defendants now move for summary judgment on the ground that an accidental shooting does not constitute excessive force because the Fourth Amendment requires more than negligence. (Br. in Supp. 17–22.) Defendants further argue that Manchester Township is not liable under *Monell* because there was no underlying unconstitutional conduct, and even if there were, Plaintiff has not established that training deficiencies caused her injury. (*Id.* at 23–28.) Finally, Defendants argue that Howell is immunized from state law claims by New Jersey's "pursuit immunity" statute. (*Id.* at 28–30.)

Plaintiff maintains that Howell's act of pointing the weapon was not accidental and constituted a seizure in and of itself. (Pl.'s Resp. 21–26.) Plaintiff further argues that Howell's actions were not objectively reasonable, in light of Evanowski's testimony that he did not use his flashlight because the area was well-lit and that he did not draw his own weapon. (*Id.* at 24–28.)

Plaintiff also asserts that a genuine issue of material fact exists as to whether Howell was adequately trained because he did not receive any training in using his hand-held flashlight in conjunction with his weapon-mounted light and the need for this training was obvious. (*Id.* at 30.) Finally, Plaintiff asserts that neither "pursuit immunity" nor "good faith" immunity applies under the circumstances. (*Id.* at 32–33.)

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

## B. Excessive Use of Force

The use of excessive use of force by a law enforcement officer is considered an unlawful "seizure" under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004). The threshold question in Fourth Amendment cases is whether a reasonable person in the plaintiff's position would have felt seized under the totality of the circumstances. *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991); *see Couden v. Duffy*, 446 F.3d 483, 493–94 (3d Cir. 2006) (finding seizure where officer approached car in which plaintiff and her children were seated, pointed gun at plaintiff, and tried to open her car door). If so, the court must determine the objective reasonableness of the conduct in light of

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight . . . [,] the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Couden*, 446 F.3d at 496–97 (citations and quotation marks omitted). Generally, "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control" over the plaintiff. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989). Although the seizure need not occur in the precise manner intended by the police, it must result from "volitional police activity performed for the purpose of seizing the plaintiff." *Brice v. City of York*, 528 F. Supp. 2d 504, 510 (M.D. Pa. 2007) (citing *Brower*, 489 U.S. at 599). Accordingly, several courts have held that plaintiffs cannot predicate excessive force claims on accidental police shootings. *See, e.g.*, *id.* at 513; *Pollino v. City of Phila.*, No. 03-6288, 2005 WL 372105, at *7 (E.D. Pa. Feb. 15, 2005); *Owl v. Robertson*, 79 F. Supp. 2d 1104, 1114 (D. Neb. 2000); *Clark v. Buchko*, 936 F. Supp. 212, 219–90 (D.N.J. 1996).

There does not appear to be any genuine dispute that Howell did not intend to fire his gun. Howell states in his sworn certification that he did not intend to fire or place his finger on the trigger, (Howell Certification ¶¶ 42–45), and Plaintiff's expert concedes in his report that Howell "may have not intentionally planned to pull the trigger." (Pl.'s Resp. Ex. G., Expert Report of Frederick J. Rast, III, at 8.) Instead, Plaintiff's theory appears to be that Howell used excessive force because the act of pointing his gun at Plaintiff at the time it discharged constituted Deadly Force as provided in the New Jersey Attorney General's Use of Force Policy (the "Policy").[2] (Pl.'s Resp. 23); *see also* (Rast Expert Report at 8 (stating that "Sgt. Howell did in fact, by his actions use excessive force by moving from a ready/cover position, to a position of 'deadly force'"). Based on the record evidence, however, there are two main problems with this argument.

First, Howell's actions were not sufficiently intentional or volitional. Namely, Howell has averred that he could not see inside the minivan, (*see* Howell Certification ¶ 39); (Pl.'s Resp. Ex. B, Howell Dep. 72:9–10), and that he pointed the gun's weapon-mounted light for illumination without knowing who or what was inside the minivan, (Howell Dep. 107:3–10). Therefore, it is difficult to imagine how Howell would know that merely pointing the gun in the minivan's direction would "create a substantial risk of causing[] death or serious bodily harm" to Plaintiff. (McKenna Certification Ex. F, Policy, at 3.)

Second, we cannot conclude that a reasonable person in Plaintiff's position would have felt seized at the time Howell pointed his gun at the minivan and the gun discharged. Specifically, Plaintiff stated in her deposition testimony that she did not see any police officers

---

[2] The Policy states that displaying a weapon constitutes a form of Constructive Authority and "[p]ointing a firearm at a suspect is an element of constructive authority to be used only in appropriate situations." (McKenna Certification Ex. F, Policy 2). The Policy further defines Deadly Force as "force which a law enforcement officer uses with the purpose of causing, or which the officer knows to create a substantial risk of causing, death or serious bodily harm." *Id.* at 3.

until after the window shattered. (Ryan Certification Ex. B, Duwana Johnson Dep. 46:20–23 ("First time I seen [sic] the police is when I looked after the [window] crash.").) This testimony is buttressed by police photographs of the minivan reflecting that the bullet from Howell's gun shattered the middle passenger-side window in an elongated pattern, such that the bullet clearly entered from the rear of the car. (*See* Ryan Certification Exs. A, C & D.) Thus, Plaintiff was not seized.

Plaintiff seeks to analogize this case to *Armstrong v. Sherman*, a case in which a police officer had "dr[awn] his firearm, pointed it at [p]laintiff, threatened to shoot him, and then broke the window of [p]laintiff's truck" before "hauling [p]laintiff out of the truck[.]" No. 09-0716, 2010 WL 2483911, at *4 (D.N.J. June 4, 2010) (unpublished). In denying summary judgment, this Court noted that "merely pointing a firearm at a person can constitute excessive force if such action is not justified by the circumstances." *Id.* (citing *Black v. Stephens*, 662 F.2d 181, 188–89 (3d Cir. 1981)). However, the critical distinction between this case and *Armstrong* is that, as described above, the evidence in this case does not support a finding that Defendant Howell intentionally pointed his firearm at Plaintiff. In *Armstrong*, it was beyond dispute that the police officer knew that the truck-driver was in the car, that the officer intentionally pointed his gun at the truck-driver, and that the truck-driver was aware that a gun was being pointed at him. These facts are notably absent here.

Given the lack of a seizure, we need not address whether Howell's actions were objectively reasonable,[3] and instead conclude on this basis that there was no excessive use of force.

---

[3] We briefly note, however, that there is ample evidence on which to conclude that it was objectively reasonable for Howell to draw his gun in the first place, given that the driver Franklin Johnson had been fleeing from a previous stop and Howell had reason to believe that Corey Milligan—whom Howell had been informed was in possession of a stolen police handgun—was a passenger in the minivan. (*See* Howell Certification ¶¶ 26–28, 31.)

-8-

### C. Due Process Claim

Plaintiff asserts in her opposition brief that Howell's actions were so reckless and deliberately indifferent as to shock the conscience under the due process clause of the Fourteenth Amendment. (Pl.'s Resp. 28–29.) The Court questions whether Plaintiff's Complaint actually states a due process claim, given that nowhere in the Complaint does Plaintiff use the terms "due process" or "shocks the conscience." Plaintiff does cite the Fourteenth Amendment, but she merely does so under the section entitled "Section 1983 Excessive Force." (*See* Compl. ¶ 22 (stating that Plaintiff "was deprived of her right to be secure in her person against unreasonable seizure of her person, in violation of the Fourth and Fourteenth Amendments of the Constitution").) We construe this reference to the Fourteenth Amendment as being included to indicate the incorporation of the Fourth Amendment against the states through the Fourteenth Amendment. Thus, it appears Plaintiff is attempting to argue a new claim not pleaded in the Complaint. Although Plaintiff has not requested leave to amend the Complaint, we find that such an amendment would likely be denied as futile. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility."). While it is true that a defendant who does not intentionally seize a Plaintiff under the Fourth Amendment may be held liable for "deliberate indifference" under the due process clause, the record evidence here does not support a finding of anything more than mere negligence on Howell's part. *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 274 (3d Cir. 2000) (stating that "[n]egligence by public officials is not actionable as a due process violation." (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). Because this type of negligence is not conscience-shocking, Plaintiff could not plausibly state a due process claim. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (stating that courts employ Fed. R. Civ. P. 12(b)(6) standard in examining whether amendment is futile).

### D. Failure to Train

Municipalities cannot be held liable under § 1983 solely on a theory of respondeat superior; instead, a plaintiff must show that the municipality's execution of a policy or custom caused the violation of federal law. *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690–91, 694 (1978). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, --- U.S. ----, 131 S.Ct. 1359 (U.S. 2011). However, a plaintiff cannot seek to hold a municipality liable for damages where the officer has inflicted no constitutional harm. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 217 n.12 (3d Cir. 2009) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Having concluded that Howell's actions were not unconstitutional, we must also deny Plaintiff's § 1983 "failure to train" claim stated against Manchester Township.[4] We note, however, that even if Howell's actions were unconstitutional, this single incident likely would not demonstrate a need for training so obvious as to give rise to a failure to train claim under § 1983. *See Connick*, 131 S. Ct. at 1360 (stating that "single-incident liability" applies only in "narrow range of circumstances" where "unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations" (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) and citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989))).

Thus, we will grant summary judgment in favor of Manchester Township on the § 1983 failure to train claim contained in Count III.

---

[4] For the same reason, we will also *sua sponte* dismiss the "supervisory liability" claim alleged against John Does 11-20 in Count II.

-10-

### E. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), "district courts may decline to exercise supplemental jurisdiction" over a state law claim if "the claim raises a novel or complex issue of State law . . . [or] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). District courts considering whether to remand claims consider the "'values of judicial economy, convenience, fairness, and comity.'" *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 253 (3d Cir. 2008) (quoting *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 157 (3d Cir. 1998)). Because we have dismissed all of Plaintiff's federal constitutional claims, and because we find that Plaintiff's tort claims raise a novel issue of state law, we will decline to exercise supplemental jurisdiction over Plaintiffs' assault and battery, intentional infliction of emotional distress, negligence, and New Jersey Civil Rights Act claims.

Plaintiff's state law claims raise a novel issue with respect to whether New Jersey's "pursuit immunity"[5] protects an officer's approach of a vehicle that is already stopped but that had been fleeing from other officers. Defendants ask this Court to simply apply *Alston v. City of Camden*, 773 A.2d 693 (N.J. 2001), a case in which an officer was running after a perpetrator when his gun fell out of his holster, hit the ground, and discharged, striking the innocent bystander plaintiff. However, this case diverges from *Alston* in at least two respects that make the applicability of pursuit immunity a novel issue. First, while the officer in *Alston* was clearly in hot pursuit and chasing the perpetrator on foot, in this case the perpetrator's minivan was stopped behind another car and Defendant Howell had approached the minivan and assumed a "cover" position to the rear of the vehicle. Second, the officer in *Alston* had made the initial stop of the

---

[5] The "pursuit immunity" provision of the New Jersey Tort Claims Act states: "Neither a public entity nor a public employee is liable for . . . any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J.S.A. 59:5-2.

perpetrator that ultimately gave rise to the chase; here, by contrast, Evanowski and Howell were investigating a vehicle that they believed was the same as a vehicle that had previously fled from different officers.

Accordingly, because neither *Alston* nor any other New Jersey case applying pursuit immunity reflects a factual situation sufficiently analogous to govern the case before the Court, we will dismiss Plaintiff's state law claims without prejudice to Plaintiff's ability to re-file in state court.  We express no opinion as to whether pursuit immunity would indeed apply, as that is a question best left to the courts of this state, in light of the values of comity and judicial economy.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, we will grant Defendants' motion for summary judgment as to the constitutional claims and we will decline to exercise supplemental jurisdiction over the remaining state law claims.  Therefore, we will dismiss the state law claims without prejudice to Plaintiff's ability to re-file in state court.  An appropriate order will follow.

 ___*/s Anne E. Thompson*___
ANNE E. THOMPSON, U.S.D.J.

DATE:____August 29, 2011_____